STATE OF CONNECTICUT *v.* NORBERTO CALES
(AC 25399)

Schaller, McLachlan and Pellegrino, Js.

Argued February 15—officially released May 23, 2006

*Glenn W. Falk,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Robert M. Brennan,* senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Norberto Cales, appeals from the judgment of conviction, rendered after

a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136, criminal trespass in the second degree in violation of General Statutes § 53a-108 and assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The sole issue raised on appeal is whether the trial court inadequately instructed the jury on the defendant's theory of defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 4, 2003, the victim, Christopher Gonzales, returned home from work at approximately 4 p.m. At approximately 7 p.m., he heard the defendant knock on the door. The victim asked who was there, and the defendant replied that it was the police. The victim opened the door, and the defendant stated that he needed $20 because a couple of guys wanted to "beat him up" because he owed them money. The victim stated that he did not have any money for the defendant. The defendant pushed the victim aside and entered the victim's apartment. The defendant grabbed numerous items from the victim's apartment. The victim struggled with the defendant to wrestle the items back. The victim then noticed a metallic object in the defendant's shirt pocket that appeared to be a knife. The defendant punched the victim on the right side of his face and dazed the victim. The defendant took the victim's cellular telephone and charger and ran from the apartment.

The victim subsequently went to a neighbor's apartment to call the police. The police arrived at the scene and took a description of the defendant, whom the victim had known for six or seven years, and relayed that description over the police radio. A few minutes later, the police officers at the scene received a call that other officers had detained the defendant on the basis of the victim's description. The police officers took the victim to the location where the defendant was being held. The victim identified him as the assail-

ant. The officers recovered the victim's cellular telephone and charger from the defendant.

During the defendant's trial testimony, he admitted that he took the cellular telephone and charger from the victim's apartment. He claimed, however, that he took the items because the victim owed him money. The defendant testified that he would have returned the items to the victim once he was paid.

The defendant was convicted and the court imposed a sentence of five years, execution suspended after three and one-half years, with three years of probation, on the count of robbery in the third degree, six months on the count of criminal trespass in the second degree and one year on the count of assault in the third degree. The court ordered the sentences to run concurrently, for a total effective sentence of five years execution suspended after three and one-half years, with three years of probation. Additional facts will be set forth as necessary.

The defendant claims that the court improperly instructed the jury on his theory of defense. We begin with our standard of review. "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will

not view the instructions as improper." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 91 Conn. App. 26, 32, 879 A.2d 526, cert. granted on other grounds, 276 Conn. 916, 888 A.2d 84 (2005); see also *State* v. *Berger*, 249 Conn. 218, 234–36, 733 A.2d 156 (1999).

The defendant's request to charge placed an emphasis on the intent necessary for a conviction of robbery in the third degree. Specifically, the defendant requested that the charge include the requirements of an intent to deprive another of property permanently.[1] Because the defendant admitted taking the cellular telephone and charger from the victim, the defense concerned the issue of intent.

"When a defendant admits the commission of the crime charged but seeks to excuse or justify its commission so that legal responsibility for the act is avoided, a theory of defense charge is appropriate. . . . [A] defendant is entitled to have instructions presented relating to any theory of defense for which there is any

---

[1] The defendant requested the court to charge the jury as follows: "I have already defined intent for you previously in my instructions, and you should apply that definition here in connection with your considerations of whether the defendant intended to deprive another of property by wrongfully taking, obtaining or withholding such property from an owner. The state must prove beyond a reasonable doubt that the defendant *intended* to appropriate it to himself or to a third person.

"Either 'intent to deprive' or 'intent to appropriate' must be found . . . . Remember, 'to intend to deprive another of property' means to intend to withhold or keep or cause it to be withheld from another *permanently* or for so long a period or under such circumstances that the major portion of its value is lost to that person. . . .

"In recalling my instruction to you on [i]ntent, you should consider the following in connection with this. If someone took property honestly, although mistakenly believing that he had a right to do so, you cannot find that he had the required intent of this element of larceny. Also, if someone took property intending to return it to the true owner, the wrongful intention of depriving a person of property cannot be proven.

"It is essential, therefore, that the state prove beyond a reasonable doubt that the defendant had an unlawful purpose or intention in his mind at the time he took the property." (Citation omitted; emphasis in original.)

foundation in the evidence, no matter how weak or incredible . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986).

The defendant claims that, on the basis of his theory of defense, he did not possess the requisite intent to be convicted of robbery in the third degree and that the jury instructions "did not meaningfully convey to the triers of fact [his] defense." A claim that the defendant lacked the requisite intent has been recognized as a defense to larceny. See *State* v. *Sawyer,* 95 Conn. 34, 36–38, 110 A. 461 (1920).

As previously stated, in reviewing a court's jury instructions, we review the charge as a whole to determine whether it fairly presented the case to the jury. The court began its instructions with a general definition of intent.[2] The court proceeded to define the specific crimes charged. In defining robbery for the jury, the court instructed on the intent necessary to commit a larceny.[3] The court then instructed the jury on circum-

---

[2] The court's instructions were as follows: "The word intent, what does it mean and how do you determine it? Intent relates to the condition of the mind of the person who committed the act, his purpose in doing an act. As defined by our statute, a person acts intentionally with respect to a result when his conscious objective is to cause such result.

"Now, what a person's purpose or intention or knowledge has been is usually a matter to be determined by you by inference. No one is able to testify that he looked into another's mind and saw there a certain purpose or intention. The only way that a jury can ordinarily determine what a person's purpose, knowledge or intent was . . . is by determining what the person's conduct was and what were the circumstances surrounding that conduct."

[3] The court stated: "A person commits a larceny when, with the intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner. To prove a larceny, the following elements must be proven by the state beyond a reasonable doubt. . . . Two, that at the time the defendant obtained such property, he intended to deprive the owner of the property or to appropriate such property to himself or to a third person."

The court further defined intent as follows: "The state must prove beyond a reasonable doubt that at the time the defendant wrongfully took, obtained

stances that would negate the requisite intent to prove larceny. The court stated: "Again, I refer back to the definition of intent, which I gave you before and which you are to apply . . . at this juncture.

"Of course, if someone took property honestly, although mistakenly believing that he had the right to do so, you would not be able to find that he had the requisite intent on the element of larceny. Also, if someone took property honestly, believing it was abandoned, for example, the necessary intent would be lacking. Also . . . if one took property intending to return it to the true owner, and if you believe that he had permission to take it, the wrongful intention of depriving the person of that property cannot be proven. It is essential, therefore, that the state prove beyond a reasonable doubt that the defendant had the unlawful purpose or intention in his mind at the time he took the property."

The court's instructions were accurate in the law and included material portions of the defendant's request to charge on the requisite intent and the circumstances that would negate the required intent. See *State* v. *Campfield*, 44 Conn. App. 6, 24–25, 687 A.2d 903 (1996), cert. denied, 240 Conn. 916, 692 A.2d 814, cert. denied, 522 U.S. 823, 118 S. Ct. 81, 139 L. Ed. 2d 39 (1997).

We conclude, therefore, that the court's instructions adequately presented the relevant law to the jury. Specifically, we conclude that the instructions regarding

or withheld property from an owner, he intended to deprive the owner or some other person of it or that he intended to appropriate [it] to himself or to a third person. To intend to deprive another of property means to intend to withhold or to keep or to cause it to be withheld from another person for so long a period of time and [under] such circumstance that a major portion of its value is lost to that person.

"In other words, the state must prove . . . that the defendant took the property for the purpose of keeping and using it permanently or virtually permanently, or disposing of the property in such a way that there was a permanent or virtual permanent loss of the property to the owner."

intent were sufficient to convey the defendant's theory of defense, correct in law, adapted to the issues and sufficient for the guidance of the jury.

The judgment is affirmed.