STATE OF CONNECTICUT *v.* MICHAEL T.[1]
(AC 26031)

Bishop, Lavine and Pellegrino, Js.

---

[1] To protect the identity of the victim and in keeping with the spirit of General Statutes § 54-86e, the defendant's last name and the names of the victim and members of her family are omitted from this opinion.

Argued May 31—officially released September 12, 2006

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that he was deprived of a fair trial because the court improperly instructed the jury with respect to (1) the penetration element of sexual assault in the first degree and (2) the date of the offense. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. At the time of the underlying crime, the victim was four years old and lived with her mother, her older brothers and the defendant. On May 14, 2002, the victim's mother gave birth to the defendant's son. At the end of May, 2002, the victim complained to her mother that her "butt" hurt. Because the child's vagina was irritated and red, her mother took the victim to a pediatric clinic where she was a known patient. Elaine Ingram, a public health nurse at the clinic, noticed a brown, green, yellow, foul smelling stain in the victim's underwear. A wet mount culture of the child's vaginal area tested positive for trichomonas, a sexually transmitted disease.[2] Trichomonas is a protozoa that lives in the urinary tract or prostate of males and in the vagina or urinary tract of females.

Ingram suspected that the victim had been sexually abused and therefore reported the incident to the department of children and families (department). Cynthia Pfeifer, an investigative social worker with the department, was assigned to the case. According to Pfeifer, the victim told her that no one had ever touched her private parts. Pfeifer requested that everyone in the family be tested for trichomonas. The victim's mother tested positive for the disease, but the other members of the victim's family did not. In June, 2002, the defendant left the victim's household. Pfeifer telephoned the defendant and asked that he come to see her on July 29, 2002. When she saw the defendant, Pfeifer arranged for him to be tested for trichomonas, but he did not keep the appointment. In August, 2002, Tawanda Ebron, a treatment worker with the department, was assigned to the case. She repeatedly attempted to contact the defendant by leaving telephone messages for him, but she never talked with him.

---

[2] The victim was treated successfully for trichomonas.

When the victim was in kindergarten, her mother gave permission for the child to attend a "good touch-bad touch" presentation. A day or two after the presentation, the victim's mother discussed the presentation with the child, who revealed that the defendant had touched her.[3] The victim cried when she told her mother what the defendant had done to her. According to the victim, the incident happened in her mother's bedroom while the mother was at a store. At trial, the victim testified that the defendant "put his thing in my privates." She demonstrated to the jury with anatomically correct dolls what had transpired between her and the defendant, including the removal of certain garments. The victim told the jury that because the defendant did that to her, she had to go to a doctor. The victim acknowledged that at school, she had learned about good touching and bad touching and feeling safe and not feeling safe. According to the victim, what the defendant had done to her was a bad touch. On cross-examination, the victim responded affirmatively when defense counsel asked her if the defendant's "thing" went inside her body.

Janet Murphy, a pediatric nurse practitioner, is affiliated with the child sexual abuse evaluation program at Yale-New Haven Hospital. She examined the victim in 2002. Murphy's physical examination of the victim's genital area was normal, and the victim said "no" when asked if anything had happened to her. Murphy explained that, typically, a child of the victim's age cannot explain to a professional how the sexual abuse occurred. Furthermore, it is not uncommon for the results of the examination of the genitalia to be normal, even for children who are able to provide specific information about things having been put inside different parts of their bodies. The state placed into evidence

---

[3] The words the victim used to tell her mother were "touching with the thing."

two exhibits depicting a generic sketch of the female genitalia, which Murphy explained to the jury.[4] With the aid of the exhibits, Murphy testified as to how the genital area of a young girl may be penetrated without affecting or touching the hymen.

Lisa Melillo-Bush, a school psychologist and forensic interviewer, testified about children's delayed disclosure of sexual abuse. According to Melillo-Bush, a four year old is not expected to have knowledge of sexual activity, and a child would not know that she had been abused until she learned what abuse was. Melillo-Bush also testified that conceptually, children have difficulty relating time and space.

The defendant, who was thirty years old at the time of trial, was the only defense witness. He testified that he did not put his penis in the victim's vagina or ever attempt to do so. He also testified that he never put the victim in the position she demonstrated with the anatomically correct dolls and that he did not sexually abuse her.

After the presentation of the state's evidence, the defendant moved for a judgment of acquittal as to the charge of sexual assault in the first degree. The defendant based his motion for a judgment of acquittal on what he perceived to be the lack of evidence of penetration because the only evidence of abuse was the victim's

---

[4] Murphy testified in part: "This basically identifies all the different parts of the female bottom. It is a pretty generic sketch. The thing about the sketch that is kind of hard to describe things is, this is one dimensional and there is a lot of dimension to the bottom, the important parts. . . .

"[T]o finish my answer to the question about why having a normal exam is not surprising, that it's always hard to know the extent of touching or what kind of touching occurred, that many times there can be touching that doesn't reach, that may even sort of just reach the hymen, but doesn't go inside into the vagina. It is still within the labia folds, but is not beyond the hymen."

testimony. The court denied the motion.[5] The jury found the defendant guilty, and the court sentenced him to thirty years incarceration, execution suspended after twenty years, with fifteen years of probation. This appeal followed.

At trial, the defendant preserved the claims of instructional error that he raises on appeal. "The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Schiavo*, 93 Conn. App. 290, 296, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006). "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the

---

[5] During colloquy on the motion for a judgment of acquittal, the court stated that "on the penetration aspect, isn't there . . . case law that indicates that there doesn't have to be damage to the—*just once penetration is made of the outer folds of the labia majora and minora, that is sufficient for penetration*?" (Emphasis added.)

instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Cales*, 95 Conn. App. 533, 535–36, 897 A.2d 657 (2006).

I

The defendant's first claim is that the court deprived him of a fair trial by improperly charging the jury as to the penetration element of sexual assault in the first degree. More specifically, he argues that there was insufficient information before the jury to understand the meaning of labia majora. We disagree and conclude that it was not reasonably possible that the court's instruction misled the jury.

With respect to sexual assault in the first degree, the court charged the jury, in part: "[General Statutes § 53a-70 (a) (2) provides that a] person is guilty of sexual assault in the first degree when such person engages in sexual intercourse . . . with another person, and such other person is under thirteen years of age and the actor is more than two years older than such other person. . . .

"First, the accused must have engaged in sexual intercourse with another person. . . . Sexual intercourse means vaginal intercourse between parties regardless of sex. Its meaning is limited to persons not married to one another. Penetration, however slight, is sufficient to complete vaginal intercourse and does not require the emission of semen. Penetration may be committed by an object manipulated by the actor into the genital opening of the victim's body. For purposes of this statute, the state need not prove penetration of the vagina, but rather penetration of the labia majora. A touching of . . . the labia majora satisfies the penetration requirement of this statute because penetration of the labia majora constitutes penetration of a body."

Both the state and the defendant took exception to the instruction that mere touching of the labia majora is sufficient for penetration pursuant to § 53a-70 (a) (2). The court referred counsel to the cases on which it relied. See *State* v. *Edward B.*, 72 Conn. App. 282, 296, 806 A.2d 64, cert. denied, 262 Conn. 910, 810 A.2d 276 (2002), quoting *State* v. *Albert*, 252 Conn. 795, 805, 750 A.2d 1037 (2000). The court and both counsel examined those cases as well as *State* v. *Scott*, 256 Conn. 517, 534, 779 A.2d 702 (2001).[6] Following a discussion of that case law and the evidence presented to the jury, counsel agreed to "keep [the instruction] the way it is," but the defendant requested that his exception be noted.

During deliberations, the jurors sent the court several notes.[7] One of the notes asked, "Does touching of the genital area (not penetrating) constitute for sexual assault." The court explained that it did not use the term "genital area" with respect to sexual assault in the first degree, but in regard to the charge of risk of injury to a child. Thereafter, the jury asked the court

[6] "Citing its decision in *State* v. *Albert*, [supra, 252 Conn. 805], our Supreme Court has noted that it has 'concluded that, for purposes of first degree sexual assault by vaginal intercourse, the state need not prove penetration of the vagina, but, rather, penetration of the labia majora. . . . In so concluding, [the court] explained that a *touching* of the labium majora satisfies the penetration requirement of [General Statutes] §§ 53a-70 and 53a-65 (2) because penetration of the labia majora constitutes penetration of the body . . . .' *State* v. *Scott*, [supra, 256 Conn. 534]. In *Albert*, the court rejected the defendant's claim that he must put his finger 'beyond the labia majora' to fall within the definition of intercourse. *State* v. *Albert*, supra, 813." (Emphasis in original.) *State* v. *Edward B.*, supra, 72 Conn. App. 296.

[7] The jury sent the court three notes: (1) "Did the child disclose to any (professional) other than her mother about the incident? and if so whom? [The victim] used the anatomically correct dolls before court. Were the dolls used in a professional setting? With whom were they used?"; (2) "Does touching of the genital area (not penetrating) constitute for sexual assault. Just for clarification."; and (3) "Had the child seen or worked with the anatomically correct dolls prior to court at all? If so, what type of setting were they presented to her in? Please provide the definition of sexual intercourse as it relates to the charge of sexual assault in the first degree."

to define again sexual intercourse as it relates to the charge of sexual assault in the first degree. The court repeated the instruction it had given previously. The defendant again objected to the instruction because he was of the opinion that there was no evidence of the type of penetration defined by the court.[8]

During oral argument to the jury, defense counsel strenuously argued that there was no evidence of penetration of the victim's vagina, more specifically, that there was no evidence of injury to the hymen or vagina. The transcript discloses, however, that the victim testified that the defendant "put his thing in my privates," and she demonstrated with anatomically correct dolls what the defendant had done to her. It is undisputed that the victim was infected with trichomonas, a sexually transmitted disease.

During the state's presentation of evidence, Murphy, the nurse practitioner, gave extensive testimony regarding the exterior anatomy of the female genitalia using an overhead projector and two one dimensional diagrams of the anatomy that were in evidence. Murphy noted that a majority of sexual abuse examinations are normal. She gave reasons why a child, even one who has reported sexual abuse in explicit detail, may have a normal physical examination: (1) a lapse of time has allowed injuries to heal, and (2) the type of touching that occurs and the part of the body touched may not leave evidence of the touching. Murphy testified: "On the bottom, there are a lot of different parts. In the genital area that we're looking at, there are outside parts

---

[8] Defense counsel stated: "The defense would object to the portion of the court's charge concerning sexual intercourse and what constitutes penetration, specifically, the labia or labium majora, as the defense doesn't see that there is any evidence of such a type of penetration. The defense doesn't believe *that* that's penetration within the meaning of the statute. And, for those reasons, Your Honor, the defense would except to that charge." (Emphasis in original.)

and inside parts. . . . [T]here is a lot of dimension to the bottom, the important parts. Thinking about if some kind of penetrating trauma occurred, the vaginal area . . . . The hymen is a piece of tissue that is surrounding the vaginal opening here. When we see injury, the hymen is one place where you potentially could see injury. Another place where you could see injury is the posterior forchette, which is this area right here. What this picture doesn't let you appreciate is the fact that there is depth to reach the hymen; that actually in order to view the hymen, these are there. *The folds of tissue called the labia majora on this diagram pull aside.* They are folds of tissue that cover over the hymen and the urethra. So those parts are underneath that. . . . [I]n getting a sense of the location of these parts, if you had a cup, the top of the cup would be the labia and the bottom of the cup is the hymen. This is much more depth than you typically see. There are variations in depth, but there [is] some sort of depth outside of the labia majora to reach the hymen." (Emphasis added.)

In his brief, the defendant argues that the court's instruction was improper because by failing to define labia majora, it did not define an element of the crime. Black's Law Dictionary defines elements of crime as "[t]hose constituent parts of a crime which must be proved by the prosecution to sustain a conviction." Black's Law Dictionary (5th Ed. 1979). The defendant relies on *State* v. *Ash*, 231 Conn. 484, 493, 651 A.2d 247 (1994), and *State* v. *Hamilton*, 30 Conn. App. 68, 74–78, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994), for the proposition that an instruction that omits an element of a statutory defense or crime is an error of constitutional dimension. We agree with the general proposition of law concerning elements of a crime, but it does not apply to the facts of this case. In *Ash*, the trial court improperly instructed the jury on the duty to retreat element of the self-defense statute. *State* v.

*Ash,* supra, 490–91; see General Statutes § 53a-19 (b). In *Hamilton,* the issue concerned the definition of pistol, specifically the length of the barrel. *State* v. *Hamilton,* supra, 74; see General Statutes § 29-27. In those cases, the element that was omitted or not defined was the particular language of the statute or a constituent part of the crime at issue. The statute at issue in this case, § 53a-70 (a) (2), does not contain the words labia majora. In instructing the jury, the court defined sexual intercourse, which is an element of the crime, in accord with our case law. See *State* v. *Scott,* supra, 256 Conn. 534.

On the basis of our review of the evidence, the court's instruction and the relevant case law, we conclude that the court's charge was correct in law and adapted to the issue at trial. For those reasons, it is not reasonably possible that the jury was misled by the court's instruction as to sexual intercourse.[9]

## II

The defendant's second claim of instructional error is that the court's charge as to the date of the offense deprived him of a fair trial. We do not agree.

In relevant part, the court charged the jury as follows: "[I]n the information, the state has alleged that the defendant committed these crimes at a certain time. It is not essential to this criminal prosecution that a crime be proved to have been committed at the precise time alleged in the information. It is sufficient for the state to prove the commission of the crime charged at any date prior to the date of the complaint or within the statute of limitations and before the complainant was

[9] To the extent that the defendant claimed at oral argument before this court that the trial court failed to inform either the defendant or the state that it would use the words labia majora in its charge, we note that the court relied on the language of the case law cited in this opinion when it denied the defendant's motion for a judgment of acquittal. See footnote 5.

thirteen years of age and the defendant was at least two years older than her, as that relates to sexual assault in the first degree, and that the complainant had not reached sixteen years of age, as that relates to the charge of risk of injury in the second count." Defense counsel objected, stating, in part, at the conclusion of the charge: "Just the applicable statute of limitations, we would object to that when you are dealing with time, in and around."

The state's amended information alleged in relevant part that "at or near the months of January, 2002 through May, 2002, at approximately the evening hours . . . the [defendant] engaged in sexual intercourse with another person and such other person was under thirteen (13) years of age and the actor was more than two (2) years older than such person . . . ." As the defendant points out in his brief, the state is not required to allege the particular moment in time that an offense occurred when the best information available to the state is imprecise. If the victim is unable to recall the exact date, the law does not require the state to furnish information that it does not have. *State* v. *Laracuente,* 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). "[A]s long as the information provides a time frame which has a distinct beginning and an equally clear end, within which the crimes are alleged to have been committed, it is sufficiently definite to satisfy the requirements of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution." *State* v. *Saraceno,* 15 Conn. App. 222, 237, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988).

The defendant agrees that time is not an element of the offense and that the information itself is proper. He does not claim that the court's instruction was an incorrect statement of the law, but that it introduced

two concepts, complaint and statute of limitations, that the court did not define. He claims, therefore, that the charge was not adapted to the issues and did not provide the jury with sufficient guidance.

The contested issue in this case was whether the defendant had sexual intercourse with the victim. The defendant testified that he never put his penis in the victim's vagina, and the victim testified that the defendant had put his "thing" in her privates and that his "thing" went inside her. Except to the extent that the state predicated its theory on the fact that the victim and her mother contracted trichomonas at a time that the defendant was living with them, the time of the abuse was not a contested issue. We conclude that it was not reasonably possible that the court's use of the two undefined terms misled the jury.

The judgment is affirmed.

In this opinion the other judges concurred.