## MICHAEL T.[1] *v.* COMMISSIONER
## OF CORRECTION
## (AC 30046)

Bishop, Beach and Peters, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued February 11—officially released July 6, 2010

*Frederick W. Fawcett*, special assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellant (respondent).

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellee (petitioner).

*Opinion*

PETERS, J. This habeas case contests the petitioner's conviction of sexual assault and risk of injury to a young child. In accordance with *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and citing *Gersten* v. *Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005), cert. denied sub nom. *Artus* v. *Gersten*, 547 U.S. 1191, 126 S. Ct. 2882, 165 L. Ed. 2d 894 (2006), the habeas court held that trial counsel had been ineffective in failing to present expert testimony to challenge the state's presentation of incriminatory expert evidence on medical issues relating to the child's symptomatology and on psychological issues relating to her credibility. Concluding that trial counsel's failure to present such expert evidence had been prejudicial to the petitioner, the court rendered judgment on the petitioner's behalf. With the permission of the habeas court, the commissioner of correction has appealed. We affirm

the judgment of the habeas court insofar as it rests on trial counsel's failure effectively to challenge the state's inculpatory medical testimony.

On February 9, 2007, the petitioner, Michael T., filed an amended three count petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel and actual innocence with respect to his conviction of sexual assault in the first degree in violation of General Statutes (Rev. to 2001) § 53a-70 (a) (2)[2] and risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2).[3] The respondent, the commissioner of correction,[4] filed a denial and a special defense alleging that the petitioner had procedurally defaulted by failing to pursue his claim of ineffective assistance of counsel in a previous petition for a writ of habeas corpus. After an evidentiary hearing, the habeas court rejected the respondent's special defense and the petitioner's claim of actual innocence but granted the petition with respect to his allegation of ineffective assistance of trial counsel. The respondent has appealed.

The factual basis for the criminal judgment against the petitioner is described in the opinion of this court affirming his conviction. *State* v. *Michael T.*, 97 Conn. App. 478, 480–83, 905 A.2d 670, cert. denied, 280 Conn. 927, 909 A.2d 524 (2006). In 2002, when the child was four years old, she was living at home with her mother,

---

[2] General Statutes (Rev. to 2001) § 53a-70 (a) provides in relevant part that "[a] person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 2001) § 53-21 (a) provides in relevant part that "[a]ny person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years . . . shall be guilty of a class C felony."

[4] At the time the petition was filed, the commissioner of correction was Theresa C. Lantz.

her older brothers and the petitioner. At the end of May, 2002, after the child complained of vaginal pain, her mother took her to a clinic in Bridgeport, where testing disclosed that the child was infected with trichomonas.[5] Id., 480.

Because the pediatric clinic nurse who assisted in the examination suspected that the child had been sexually abused, she properly reported the incident to the department of children and families (department). When subsequently questioned by a departmental investigative social worker assigned to the case, the child stated that no one had ever touched her private parts. A subsequent inquiry by a pediatric nurse practitioner affiliated with the child sexual abuse evaluation program at Yale-New Haven Hospital elicited the same response, that nothing had happened to her. Id., 480–81.

In light of the child's infection, everyone in the child's family was asked to be tested for trichomonas. Only the child's mother tested positive for the disease. The petitioner, who had moved out of the family home in the interim, did not keep a scheduled appointment for testing. Id., 480.

Approximately one year later, after attending a " 'good touch-bad touch' " presentation in her kindergarten class, the child told her mother that the petitioner had touched her inappropriately. She testified to the same effect at his trial. Id., 481.

At the criminal trial, the state presented expert witnesses on two subjects, trichomonas and the reliability of children's statements. Four expert witnesses who were questioned about trichomonas testified that it was a condition that was sexually transmitted.[6] To explain

[5] Trichomonas is a parasitic protozoa that can infect the urinary tract or prostate of males and the vagina or urinary tract of females.

[6] The state's case included the testimony of Sanjeev Rao, a medical doctor, who stated categorically that the disease had only been documented to be transmitted through a deposition of semen.

the delay in the child's reporting that someone had touched her inappropriately, an expert witness who was a school psychologist and forensic interviewer testified that, because a four year old child could not be expected to have knowledge of sexual activity, she would not know that she had been abused until she learned what abuse was. Id., 482. Trial counsel challenged this expert testimony only by cross-examination of the state's witnesses.

The petitioner was the only defense witness to testify at his trial. He denied having sexually abused the child. Defense counsel, in his closing argument to the jury, argued for acquittal either because trichomonas could be transmitted nonsexually or because the state had not proven penetration. The jury found the petitioner guilty of sexual assault in the first degree and risk of injury to a child.

In the petitioner's direct appeal to this court, the only issues that he raised were two challenges to the trial court's jury instructions. This court affirmed the judgment against him. Id., 490.

At the petitioner's habeas hearing, senior assistant state's attorney Cornelius P. Kelly, who had successfully prosecuted the petitioner, testified that the petitioner's trial counsel, David M. Abbamonte, now deceased, had been given access to everything in the state's file. There was no evidence, at the habeas trial, that trial counsel had ever requested funding for expert testimony.

The principal witness at the habeas hearing was Suzanne M. Sgroi, a physician who is an adjunct professor at St. Joseph College in West Hartford, the director of the St. Joseph College Institute for Child Sexual Abuse Intervention for the treatment of child sexual abuse and the executive director of New England Clinical Associates, an organization that works with child abuse trauma. Without objection by the respondent,

Sgroi was found to be qualified as an expert in child sexual abuse and venereal disease. Furthermore, the respondent did not challenge the admissibility of any of her testimony.

The habeas court found that Sgroi's testimony identifying "mistakes, flaws and omissions" in the petitioner's criminal trial was highly credible. Sgroi testified that the child had had urinary-vaginal symptomology at least eight months prior to being diagnosed with trichomonas. Contrary to the state's expert testimony at trial linking trichomonas to sexual abuse, she stated that a child could have contracted such an infection by "living in the same home with somebody who had the infection, who wasn't all that careful about hygiene, perhaps because of not being careful about laundering towels or having community towels in the bathroom, perhaps because of washing the child in bath water already used by adults and the like." She further testified that guidelines published by the American Academy of Pediatrics do not include trichomonas as a disease that is diagnostic of sexual abuse.

Sgroi also expressed her professional opinion that the record raised questions about the reliability of the information provided by the child. In her view, in light of the child's developmental delays, "the interviewing procedures were inadequate to the task of finding out [whether the information the victim provided was] a detailed, reliable, trustworthy account of alleged sexual abuse by [the petitioner]."

In addition to relying on Sgroi's testimony, the habeas court also found persuasive the testimony of attorney Michael Blanchard about the use of expert witnesses to assist the defense in a criminal trial. Blanchard testified that the proper preparation for a criminal trial involving charges of sexually assaulting a minor, in particular when the defendant denies the charges and will

proceed to trial, necessitates the utilization of an expert witness both for trial preparation and during the trial itself. In his view, such required evidence was exemplified by Sgroi's testimony describing nonsexual modes of transmitting trichomonas and challenging the manner in which the child had been interviewed.

In her posttrial brief, the respondent did not challenge the propriety or the accuracy of the expert testimony presented by the petitioner. She argued only that the issues identified by the experts at the habeas hearing had been adequately brought to the attention of the trial jury by trial counsel's cross-examination of the state's lay and expert witnesses.

The habeas court concluded, however, that trial counsel's failure to call an expert witness in the petitioner's criminal trial constituted ineffective assistance of counsel that had been prejudicial to the petitioner.[7] The court faulted trial counsel for failing to utilize a subject matter expert during the criminal trial to inform the jury about issues relating to the transmission of trichomonas and the reliability of the belated disclosure of an assault by the child.

The respondent's appeal challenges only the legal conclusions of the habeas court.[8] We begin by setting forth our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Mock* v. *Commissioner of Correction*, 115 Conn. App. 99, 103–104, 971

[7] The court declined to address trial counsel's pretrial and investigative efforts because there was an inadequate record, as a result of trial counsel's death prior to the habeas hearing.

[8] The respondent's brief states: "The habeas court's historical fact determinations are not erroneous."

A.2d 802, cert. denied, 293 Conn. 918, 979 A.2d 490 (2009).

The respondent advances three arguments in support of her claim that, as a matter of law, the habeas court should not have faulted trial counsel for failing to present expert evidence to inform the jury about transmission of trichomonas infections. First, the respondent claims that trial counsel's cross-examination of the state's witnesses at trial and his argument to the jury sufficiently informed the jury about the possibility of nonsexual transmission of trichomonas. Second, the respondent hypothesizes that trial counsel's decision not to present expert evidence on this subject may have been "sound trial strategy." Third, the respondent questions the extent to which Sgroi's testimony would have been admissible at trial. Finally, the respondent questions the validity of the habeas court's determination that the petitioner was prejudiced by the identified omissions in his trial representation.

The habeas court expressly considered and rejected the respondent's first two arguments about the necessity for defense counsel to present expert evidence under the circumstances of this case. The court relied on this court's dictum, in *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 76, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008), that, under certain circumstances, such as those involving the sexual abuse of children, the failure to use *any* expert can result in a determination that a criminal defendant was denied the effective assistance of counsel. The habeas court also cited with approval the detailed analysis contained in *Gersten* v. *Senkowski*, supra, 426 F.3d 607, and the cases cited therein, in which that court held that "[i]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel. . . . This is particularly so

where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim, as opposed to direct physical evidence such as DNA, or third party eyewitness testimony." (Citations omitted.) Id.; see also B. A. Townsend, "Defending the 'Indefensible': A Primer to Defending Allegations of Child Abuse," 45 A.F. L. Rev. 261, 270 (1998) ("[i]t is difficult to imagine a child abuse case . . . where the defense would not be aided by the assistance of an expert"). Except for stating her disagreement with the court's conclusion, the respondent has not proffered a reasoned basis for rejection of the court's analysis of these issues. We are not persuaded to do so.

Turning to the respondent's third ground for reversal, we note that the habeas court was not asked to address the admissibility of Sgroi's testimony in a judicial proceeding. When she presented evidence at the habeas hearing, the respondent did not question Sgroi's professional credentials or challenge the admissibility of her testimony. At the same hearing, when attorney Blanchard testified that Sgroi's testimony would have transmitted valuable information to the jury based upon her medical expertise and the medical issues presented in this case, the respondent did not question whether that testimony would have been admissible at trial. The respondent filed no motion for articulation; see Practice Book § 66-5; to supplement the record. We decline to overturn the judgment of the habeas court on this ground.

Finally, even though a habeas court may deny a petition for habeas corpus because of the failure of the petitioner to demonstrate prejudice from trial error, the respondent has failed to present a reasoned argument why, in this case, the habeas court improperly found prejudice to have been established. Having been persuaded by Sgroi's expert testimony of "mistakes, flaws

and omissions" in the medical testimony underlying the criminal prosecution of the petitioner, the court properly determined that trial counsel's ineffectiveness prejudiced the petitioner.

On this state of the record, we are persuaded that we need not address the habeas court's alternate conclusion questioning the reliability of the child's recollection, one year after the event, that the petitioner had engaged in sexual conduct with her. The respondent has not briefed this issue separately. We need not, therefore, decide today whether jurors are so likely to be unfamiliar with issues relating to the alleged suggestibility of young children as to require expert evidence to be presented by the defense. For this case, it suffices to affirm the habeas court's judgment on the ground that the petitioner is entitled to a new trial because his trial counsel was ineffective in failing to present expert testimony to challenge the state's expert medical testimony that strongly linked the child's trichomonas to a sexual assault.

The judgment is affirmed.

In this opinion BISHOP, J., concurred.

BEACH, J., dissenting. I respectfully dissent. While I have reservations regarding the habeas court's conclusions that trial counsel rendered deficient performance, I would reverse the habeas court's judgment because I do not believe that the petitioner, Michael T., was prejudiced by the performance of counsel.

The applicable standard of review is well known. "Under [*Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both deficient performance and actual prejudice." *Russell* v. *Commissioner*

*of Correction*, 49 Conn. App. 52, 53, 712 A.2d 978, cert. denied, 247 Conn. 916, 722 A.2d 807 (1998), cert. denied sub nom. *Russell* v. *Armstrong*, 525 U.S. 1161, 119 S. Ct. 1073, 143 L. Ed. 2d 76 (1999). "The prejudice prong requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Raynor* v. *Commissioner of Correction*, 117 Conn. App. 788, 796, 981 A.2d 517 (2009), cert. denied, 294 Conn. 926, 986 A.2d 1053 (2010).

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland*, however, is a mixed question of law and fact subject to our plenary review." (Citation omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

I begin my analysis of *Strickland*'s prejudice prong by comparing the evidence elicited at the habeas trial with the evidence actually presented at the petitioner's criminal trial to determine whether the petitioner has proved that there is a reasonable probability that, had the additional evidence been presented at the criminal trial, the result would have been different. As stated by the majority, the habeas court determined that Suzanne M. Sgroi, an expert witness in child sexual abuse and venereal disease who testified for the petitioner, was

credible and factually accurate. For the purpose of analyzing prejudice, then, I accept and apply the court's findings in that regard. Sgroi summarized her opinion as to the means of transmission of trichomonas: "Although trichomonas is *primarily* sexually transmitted, in my opinion, there are also nonsexual ways for a child to acquire the infection." (Emphasis added.) She stated that the leading authoritative source for the guidance of professionals was the set of guidelines published by the American Academy of Pediatrics. The 1999 publication stated that if one found trichomonas in a child, the treater should be "highly suspicious" of sexual abuse and that a report to authorities was mandated. The presence of one of several other sexually transmitted diseases, gonorrhea, syphilis, human immunodeficiency virus and chlamydia, was considered "diagnostic" or, apparently, conclusive of sexual abuse. She said that she agreed with the testimony of Janet Murphy, a witness for the state in the criminal prosecution, regarding information from the Centers for Disease Control. Murphy had testified at the criminal trial that trichomonas was "primarily" a sexually transmitted disease but that it could also be transmitted by nonsexual means.

The habeas court found Sgroi to be credible and implicitly seems to have found that her opinion, or a very similar opinion, would have been able to have been produced by defense counsel at the criminal trial in 2004.[1] A scouring of the transcript of the criminal trial reveals that very similar information was elicited by David M. Abbamonte, the petitioner's attorney in the criminal trial. The habeas court referred to the testimony of Sanjeev Rao, who was produced by the state in the criminal trial for the sole purpose of providing expert testimony. Rao testified on direct examination that trichomonas was a sexually transmitted disease,

---

[1] Sgroi referenced the 1999 guidelines published by the American Academy of Pediatrics and a website of the Centers for Disease Control.

and stated that the only known mode of transmission was through sexual means.

On cross-examination by Abbamonte, Rao qualified his opinion to a degree. The following transpired:

"Q. There are nonsexual ways that a female can get trichomonas?

"A. I can't say that.

"Q. All right. It can come from a toilet seat, perhaps?

"A. It is—

"Q. I know it—

"A. —in the literature but, again, just because you see it in print, it doesn't mean it can happen. . . .

"Q. It's been found hours later in urine that's been exposed; is that correct?

"A. Urine and semen, yes.

"Q. And the way it could be transferred, for instance, by toilet seat, if urine was on it, that urine was infected, and a female sitting on the toilet seat could get it; is that correct, within a short time, within a few hours?

"A. Yes.

"Q. How . . . does that affect—does the protozoa move? Locomotes?

"A. They have flagella which helps them move.

"Q. It would find its way into the vagina in that situation?

"A. It could.

"Q. And also says that this protozoa can't live long in a dry environment, so presumably [in] urine or certain waters it can live a lot longer; is that correct?

"A. Yes.

"Q. And wet towels, it could live a lot longer?

"A. It hasn't been documented, wet towels. It's seen in semen, it's seen in urine, but it's never been documented in wet towels as a mode of transmission."

On redirect examination by the state, Rao testified that the protozoa could live on a toilet seat for "a few hours" so long as the environment is moist.

Murphy also testified for the state in the criminal trial. She was a pediatric nurse practitioner who worked with the Yale-New Haven Hospital child sexual abuse evaluation program, among other responsibilities. She had a master's degree in nursing from Yale University and had lectured in the field. She examined the victim shortly after she had been diagnosed with trichomonas; the victim at that time denied any inappropriate touching. Murphy was concerned because trichomonas was "primarily" a sexually transmitted disease.

On cross-examination, after establishing that the physical examination of the victim had showed that the victim was entirely normal, Abbamonte questioned Murphy as follows:

"Q. Okay. With regard to trichomonas, and, now I'm jumping on the word you used twice with regard to [the prosecutor's] question, and, that is, primarily, there are ways of a nonsexual nature, are there not, that trichomonas can be passed on to a female?

"A. It's very uncommon, but there are reports of— from moist toilet seats. It's thought to be in the elderly population where occasionally it is diagnosed, which is where we have that kind of information, but primarily it's a sexually transmitted disease.

"Q. And it can also be spread by wet or a moist towel, can it not?

"A. It's thought that to be possible, yes.

"Q. . . . Let's say a female is infected with trichomonas, and maybe she touches herself, for whatever reason, not a male involved, just touching her own fluids, and then touching, for instance, a child or another person on their sexual organ; that could cause a transmission, then, even without the presence of semen or seminal fluid?

"A. That's a possibility, although I think when hands get washed, it would wash it away.

"Q. But it is a possibility—

"A. I think—

"Q. —that it can come directly from a female? Whether she's had sex with a male or not, it can come directly from a female?

"A. It's a possibility."

Abbamonte then inquired about different hypothetical situations, and the concluding question and answer were:

"Q. So, there are a number of ways nonsexually that this can be transmitted—

"A. Yes.

"Q. —to the female? Okay."

In closing arguments to the jury, both sides suggested that transmission by other than sexual means was possible. Both sides appeared to accept the same general proposition that trichomonas was "primarily" transmitted sexually but that there were other means of transmission. The state argued that "the [petitioner] . . . is going to present to you a scenario that the only way [the victim] got this was because of her mom . . . ." The prosecutor went on to discuss weaknesses in the

petitioner's testimony and the strength, he claimed, of the victim's identification of the petitioner as the culprit. Later, the prosecutor asserted that doctors and other witnesses said that "the only way you see this in a child who is four years of age is through sexual intercourse.[2] And scenarios were presented to the doctors and some of the experts here, I suppose that's possible, but the literature—I haven't come across anything in the literature that suggested that that could take place in that fashion. . . . Possibilities were thrown out to explain how you could possibly get this, and those are just possibilities and mere speculation." The prosecutor did not focus at length on the medical opinions.

Abbamonte, however, stressed that it was medically possible for the victim to contract trichomonas without sexual contact. He argued that "[t]here's evidence from medical specialists that either semen or urine that's contaminated with the protozoa trichomonas can be transferred by hand either in a sexual or nonsexual way. . . . These are the nonsexual ways that trichomonas can be gotten. These experts also indicated that it is extremely rare for a four year old to get trichomonas." He discussed the idea that the protozoa can live for two hours "in a moisture environment" and that they can move. He argued: "There is no question that most of the time trichomonas means sexual transmission, but this is a four year old, which is extremely rare for them to get. It's a four year old that was in a house with the mom, as it turned out, having trichomonas. A mom who admittedly . . . you still have to dress them, bathe them, groom them, etc., etc. It's not unusual for a four year old to be naked in the household. There's a bathroom in the household. Doctors say—say it can be transferred by hand. So, obviously, no one sets out to give this poor little girl this disease. So, it is obviously an accidental transmission of people who don't know

---

[2] As noted previously, this assertion was not uncontested.

that they're—that they're infected. . . . Again, there is no question. [The prosecutor] said it's speculation. It's not speculation. It's just inferences you could make from the evidence. There are ways, in the distinct minority, but there are ways that trichomonas can be transferred to others through activity other than sexual." Abbamonte went on to urge that there was at least reasonable doubt, based on the science and that the victim's testimony was not reliable.

The prosecutor began his rebuttal by arguing that nonsexual transmission was unlikely but never argued that it was impossible. He continued: "The most important thing I think you have to worry about is—the trichomonas situation, that is almost like a side issue here. It is almost like a tag on." He stressed the credibility of the victim. In closing, he said: "[S]ome of the arguments that [Abbamonte] makes may raise a little bit of doubt in your mind; well, you know, that's a possibility. Dr. Rao said that. Janet Murphy said that's a possibility. Dr. [Joel] Allen, who treated the woman, said that's a possibility. We're not dealing with possibilities here. We're dealing with proving the case beyond a reasonable doubt . . . ."

Several witnesses at the habeas trial noted the similarities between the opinions offered by Sgroi and the evidence actually introduced at the criminal trial. Sgroi testified that many of her concerns had been raised in the direct and cross-examination of Murphy and Sgroi agreed that she "basically agreed" with Murphy. Sgroi also agreed that in closing argument Abbamonte had mentioned the opinions. Her conclusion was that an expert witness should have been presented "to help clarify all of these things or to provide, first of all, a more accurate interpretation about how trichomonas can be transmitted nonsexually . . . ."

In order to determine whether the petitioner was prejudiced by the failure of his trial counsel to produce

at his criminal trial an expert opinion similar to that expressed by Sgroi at his habeas trial, we, as a reviewing court, are to compare the omitted evidence with the evidence actually produced at trial. We then make a *de novo* determination as to the effect the omitted evidence would have had on the outcome of the criminal trial had it been produced. The petitioner has the burden to show that there is a reasonable probability that, absent the unprofessional errors, the result of the criminal proceeding would have been different. A "reasonable probability" is one that undermines one's confidence in the outcome. *Strickland* v. *Washington*, supra, 466 U.S. 694.

It is true, as the expert witness Michael Blanchard testified in the habeas trial, that an expert for the defense may have been useful in the presentation of the petitioner's criminal trial and may have presented the issues with somewhat more clarity.[3] I agree that an expert conceivably may have had some effect on the outcome of the trial. But because the essential points of Sgroi's opinion were raised by Abbamonte in his cross-examinations of the witnesses presented by the state, the jury already had the essential information on the topic. The effect that more testimony, subject, of course, to cross-examination, would have had on the outcome of the criminal trial is quite speculative.[4] There does not exist a *reasonable probability* that the outcome of the criminal trial would have been different

---

[3] Blanchard also agreed, however, that Abbamonte had covered the main points on cross-examination of the prosecution's witnesses.

[4] It is noted in *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 77 n.8, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008), that "[t]he Constitution does not entitle a criminal defendant to the effective assistance of an expert witness. To entertain such claims would immerse federal judges in an endless battle of the experts . . . . *Wilson* v. *Green*, 155 F.3d 396, 401 (4th Cir.), cert. denied sub nom. *Wilson* v. *Taylor*, 525 U.S. 1012, 119 S. Ct. 536, 142 L. Ed. 2d 441 (1998)." (Internal quotation marks omitted.)

if additional testimony on the same topic had been presented. During the criminal trial, both sides suggested during closing arguments that trichomonas was primarily transmitted sexually, and both sides suggested that nonsexual transmission was possible. This was the essence of Sgroi's opinion. Accordingly, I do not believe that one's confidence in the verdict is undermined by the lack of a defense expert. I would, therefore, conclude that the petitioner's burden to prove the prejudice prong of *Strickland* has not been sustained.

Although it is not necessary for me to analyze the performance prong of *Strickland* because I have already concluded that the petitioner's ineffective assistance claim fails under the prejudice prong, I will discuss it briefly because I have reservations as to whether this prong has been satisfied.[5] Because the factual findings of the habeas court are not clearly erroneous, and

---

[5] One consideration regarding the performance prong is whether an expert opinion should have been presented regarding the reliability of the victim's testimony. The majority did not need to reach this issue, and I consider it only briefly. Part of Sgroi's testimony at the habeas trial made the point that investigators for the department of children and families, misled by assertions of medical personnel that trichomonas could be transmitted only by sexual means, jumped to that conclusion and influenced the victim's accusation of the petitioner. The victim, because of her age and developmental factors, was susceptible to suggestion. The state produced an expert witness, Lisa Melillo-Bush, to explain delayed disclosure and other characteristics of children who have been the victims of sexual abuse. Abbamonte cross-examined Melillo-Bush and broached the concept of suggestiveness. Both counsel mentioned suggestiveness in closing arguments to the jury.

The habeas court alluded to Sgroi's opinion regarding suggestiveness and held that Abbamonte's representation was defective in not producing *any* expert witness, but the habeas court did not analyze independently the suggestiveness claim in depth. Sgroi's opinion is critical of the investigative procedure, in that the investigators leaped to the conclusion of sexual abuse. Sgroi suggests that the conclusion was communicated in some fashion to the victim. It is difficult to imagine how an expert would testify about suggestiveness, in that witnesses are forbidden to comment on the credibility of another witness. *State* v. *Singh*, 259 Conn. 693, 708, 712, 793 A.2d 226 (2002) (improper to ask witness to comment on another witness' veracity; credibility determinations solely within province of jury). Counsel are of course free to argue suggestiveness from facts presented in evidence, and

no such claim was raised on appeal, I accept the court's historical findings that Abbamonte did not consult an expert and, of course, did not present an expert at trial. As noted by the habeas court, pretrial decisions regarding hiring an expert are inextricably related to the conduct of trial, and, because Abbamonte died prior to the habeas trial and his file apparently could not be found or reproduced, pretrial decisions and trial strategy in general were difficult to determine. We simply do not know the extent to which Abbamonte educated himself or sought the assistance of others; we do know that his questions on cross-examination presaged to a significant extent the opinion expressed by Sgroi.

In order to prove the performance prong, the petitioner must show that counsel made "errors so serious that [he] was not functioning as the counsel guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) *Siano* v. *Warden*, 31 Conn. App. 94, 97, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993).

suggestiveness is not necessarily a subject which is beyond the ken of the average juror and, thus, requiring expert testimony. *State* v. *Arline*, 223 Conn. 52, 58, 612 A.2d 755 (1992) (counsel has right to argue in final argument any reasonable inferences from facts elicited); *State* v. *Calabrese*, 116 Conn. App. 112, 124, 975 A.2d 126 (jury may draw inferences from evidence presented based on its common knowledge and experience), cert. denied, 293 Conn. 933, 981 A.2d 1076 (2009). Such witnesses do not seem to be presented with any frequency in the trial courts. I would not conclude, on the record before us, that counsel rendered constitutionally deficient performance in this regard, especially in light of the presumption of competent representation, or that the defense was prejudiced to the degree required by *Strickland*.

Abbamonte's performance was significantly less egregious, even assuming the historical facts as found by the habeas court, than that found lacking in the cases relied upon by the habeas court. In *Siano* v. *Warden,* supra, 31 Conn. App. 99–105, the petitioner had been convicted of a burglary in which he allegedly had broken into a house with an accomplice, ascended to the second floor and took "heavy" computer equipment, which the petitioner carried at one point. The petitioner had broken his leg and his wrist about one month before the accident; the fractures were displaced and the wrist had been pinned. Defense counsel had announced to the jury that the petitioner's orthopedist would testify, but he failed to talk to or to subpoena the physician. During the criminal trial, counsel tried to call the orthopedist, despite the lack of a subpoena, but the orthopedist did not testify at the criminal trial because he was in surgery at the time. The petitioner was convicted. At the habeas hearing, the orthopedist testified about the injury and stated that it would have been very difficult for the petitioner to have carried the equipment at the time in question. In this situation, counsel was held to have provided ineffective assistance.

In *Lindstadt* v. *Keane,* 239 F.3d 191 (2d Cir. 2001), the United States Court of Appeals for the Second Circuit found that a defense attorney provided ineffective assistance in a trial in which the petitioner was found guilty of sexual abuse. At the criminal trial, a physician testifying for the state said that the victim had physical signs of abuse, and based his testimony on a study that was never introduced into evidence or "produced or usefully identified" at any time later. Id., 194. At the habeas trial, a study diametrically opposed to the state's position was introduced. Id., 201. Trial counsel had done nothing to contradict the state's expert, had conducted no relevant research, had not requested the studies the state's witness purportedly relied on and was unable

to cross-examine effectively. In these circumstances, performance was deficient. Other cases have a similar tenor. See *Gersten* v. *Senkowski*, 426 F.3d 588, 608 (2d Cir. 2005) (defense counsel simply conceded medical evidence without consultation with expert), cert. denied sub nom. *Artus* v. *Gersten*, 547 U.S. 1191, 126 S. Ct. 2882, 165 L. Ed. 2d 894 (2006).

The facts in the present case do not appear to fall into quite the same category as cases such as *Siano* v. *Warden*, supra, 31 Conn. App. 94, *Lindstadt* v. *Keane*, supra, 239 F.3d 191, and *Gersten* v. *Senkowski*, 426 F.3d 588. Abbamonte appeared to be generally familiar with the subject matter and forced the state to concede that his theories were possible. We should take care to note that "[t]here is no *per se* rule that requires trial attorneys to seek out an expert." (Emphasis in original; internal quotation marks omitted.) *Gersten* v. *Senkowski*, supra, 609. I am reluctant to suggest that failure to call an expert witness constitutes *constitutional* ineffectiveness where the jury was informed of the substance of the opinion. From the perspective of a trial lawyer, the presentation of an expert witness can be dangerous, as, among other considerations, it leaves the expert exposed to potentially damaging cross-examination. Expert testimony should not be considered to be constitutionally required in all sexual abuse cases. In some cases, of course, expert testimony may be constitutionally required, but, in light of the testimony that was presented to the jury in this trial, this is not such a case.

I would reverse the judgment of the habeas court and direct that judgment be rendered in favor of the respondent, the commissioner of correction.