MICHAEL T.* *v.* COMMISSIONER OF CORRECTION
(AC 30046)

Gruendel, Sheldon and Peters, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained.

Argued February 14—officially released July 9, 2013

*Frederick W. Fawcett,* former supervisory assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, *Cornelius P. Kelly,* senior assistant state's attorney, and *Gerard P. Eisenman,* former senior assistant state's attorney, for the appellant (respondent).

*Temmy Ann Pieszak,* chief of habeas corpus services, for the appellee (petitioner).

*Opinion*

SHELDON, J. The respondent, the commissioner of correction, appeals from the judgment of the habeas court granting, in part, the amended petition of the petitioner, Michael T., for a writ of habeas corpus on the ground that his trial counsel had rendered ineffective assistance by failing, inter alia, to present expert testimony to challenge the state's presentation of incriminatory expert evidence on psychological issues relating

to the child victim's credibility.[1] The dispositive issue in this appeal is whether the failure of the petitioner's trial counsel to present expert evidence on this subject constituted deficient representation under the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for assessing ineffective assistance of counsel claims pursuant to the sixth amendment to the United States constitution. We affirm the judgment of the habeas court.

On February 9, 2007, the petitioner filed an amended three count petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel and actual innocence with respect to his convictions of sexual assault in the first degree in violation of General Statutes (Rev. to 2001) § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2). The respondent filed a denial and a special defense alleging that the petitioner had procedurally defaulted by failing to pursue his claim of ineffective assistance of counsel in a previous petition for a writ of habeas corpus. After an evidentiary hearing, the habeas court rejected the respondent's special defense and the petitioner's claim of actual innocence, but granted the petition with respect to the petitioner's allegation of ineffective assistance of trial counsel. The habeas court found that the petitioner's trial counsel had been ineffective in failing to present expert testimony to challenge both the state's presentation of incriminatory

---

[1] The judgment of the habeas court was the subject of a previous appeal in *Michael T.* v. *Commissioner of Correction*, 122 Conn. App. 416, 999 A.2d 818 (2010), rev'd, 307 Conn. 84, 52 A.3d 655 (2012). In that case, this court affirmed the judgment of the habeas court solely on the basis of the habeas court's alternate conclusion that the petitioner's trial counsel had rendered ineffective assistance by failing to present expert testimony to challenge the state's presentation of incriminatory expert evidence on medical issues relating to the child victim's symptomatology. That decision was overturned by our Supreme Court, which remanded the case to this court for consideration of the respondent's remaining claims. *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 103–104, 52 A.3d 655 (2012).

expert evidence on medical issues relating to the child's symptomatology and psychological issues relating to the reliability of the child's disclosure of sexual abuse. The habeas court concluded that trial counsel's failure to present such expert evidence had been prejudicial to the petitioner and, therefore, rendered judgment in his favor.

The respondent appealed to this court, which affirmed the judgment of the habeas court insofar as it rested on trial counsel's failure to challenge effectively the state's inculpatory medical testimony. The respondent then appealed to our Supreme Court. Our Supreme Court reversed the judgment of this court under the second prong of *Strickland*, holding that the petitioner was not prejudiced by any alleged deficient performance of his trial counsel because his trial counsel, by means of his cross-examination of the state's experts and his closing argument to the jury, established that trichomonas could be contracted through nonsexual means—the information about which a subject matter expert would have testified. *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 102, 52 A.3d 655 (2012). Our Supreme Court thus held that, "[o]n the basis of the record before [it], [it could not] conclude that there is a reasonable probability that the outcome of the criminal trial would have been different if additional testimony on the same topic had been presented." Id., 103. Accordingly, it remanded the matter to this court for a determination as to whether the petitioner's trial counsel provided ineffective assistance by failing to call an expert to testify regarding psychological issues relating to the reliability of the child's disclosure of sexual abuse. Id., 103–104.

The factual basis underlying the petitioner's criminal conviction is described in this court's decision affirming the habeas court's judgment. *Michael T.* v. *Commissioner of Correction*, 122 Conn. App. 416, 418–21, 999

A.2d 818 (2010), rev'd, 307 Conn. 84, 52 A.3d 655 (2012). "In 2002, when the child was four years old, she was living at home with her mother, her older brothers and the petitioner. At the end of May, 2002, after the child complained of vaginal pain, her mother took her to a clinic in Bridgeport, where testing disclosed that the child was infected with trichomonas.[2] . . .

"Because the pediatric clinic nurse who assisted in the examination suspected that the child had been sexually abused, she properly reported the incident to the department of children and families (department). When subsequently questioned by a departmental investigative social worker assigned to the case, the child stated that no one had ever touched her private parts. A subsequent inquiry by a pediatric nurse practitioner affiliated with the child sexual abuse evaluation program at Yale-New Haven Hospital elicited the same response, that nothing had happened to her. . . .

"In light of the child's infection, everyone in the child's family was asked to be tested for trichomonas. Only the child's mother tested positive for the disease. The petitioner, who had moved out of the family home in the interim, did not keep a scheduled appointment for testing. . . .

"Approximately one year later, after attending a 'good touch-bad touch' presentation in her kindergarten class, the child told her mother that the petitioner had touched her inappropriately. She testified to the same effect at his trial. . . .

"At the criminal trial, the state presented expert witnesses on two subjects, trichomonas and the reliability of children's statements. Four expert witnesses who were questioned about trichomonas testified that it was

---

[2] "Trichomonas is a parasitic protozoa that can infect the urinary tract or prostate of males and the vagina or urinary tract of females." *Michael T.* v. *Commissioner of Correction,* supra, 122 Conn. App. 419 n.5.

a condition that was sexually transmitted.[3] To explain the delay in the child's reporting that someone had touched her inappropriately, an expert witness who was a school psychologist and forensic interviewer testified that, because a four year old child could not be expected to have knowledge of sexual activity, she would not know that she had been abused until she learned what abuse was. . . . Trial counsel challenged this expert testimony only by cross-examination of the state's witnesses.

"The petitioner was the only defense witness to testify at his trial. He denied having sexually abused the child. Defense counsel, in his closing argument to the jury, argued for acquittal either because trichomonas could be transmitted nonsexually or because the state had not proven penetration. The jury found the petitioner guilty of sexual assault in the first degree and risk of injury to a child. . . .

"The principal witness at the habeas hearing was Suzanne M. Sgroi, a physician who is an adjunct professor at St. Joseph College in West Hartford, the director of the St. Joseph College Institute for Child Sexual Abuse Intervention for the treatment of child sexual abuse and the executive director of New England Clinical Associates, an organization that works with child abuse trauma. Without objection by the respondent, Sgroi was found to be qualified as an expert in child sexual abuse and venereal disease. Furthermore, the respondent did not challenge the admissibility of any of her testimony." (Citations omitted.) Id., 418–21.

The habeas court found that Sgroi's testimony identifying "mistakes, flaws and omissions" in the petitioner's

[3] The state's case included the testimony of Sanjeev Rao, a medical doctor, who stated categorically that "the disease had only been documented to be transmitted through a deposition of semen." *Michael T.* v. *Commissioner of Correction,* supra, 122 Conn. App. 419 n.6.

criminal trial was highly credible. Sgroi testified that there were a variety of problems in the way the child was interviewed in this case by her mother and the professionals who were investigating the complaint of sexual abuse. Sgroi stated that, in her professional opinion, the investigation in the present case was flawed because it was conducted in an accusatory atmosphere in which the reliability of the child's disclosure that the petitioner had sexually abused her was tainted by repetitive interviewing.

Sgroi testified that the entire investigation, which eventually led to the disclosure of sexual abuse, was based on the false premise "that since [the child] had a sexually transmitted disease, a male must have [penetrated her], which in turn created an accusatory context for all of the interviewing." Sgroi testified that from the moment the child was diagnosed with trichomonas, Josette Bou-Khalil, the physician who made that diagnosis, "set the tone for the entire investigation of suspected sexual abuse of [the child] not just by making her mandated report of suspected child abuse to the [department], which she was required by law to do, but also by saying definitively there is only one way this little girl could have acquired this infection."

When the child was four and one-half years old, she was initially questioned by her mother and Cynthia Pfeiffer, a department investigative social worker. Sgroi testified that research has shown that children under five years of age are particularly susceptible to leading and contaminating interview approaches and often have developmental barriers for providing the detailed and contextual information that enhances the credibility of their reports. Sgroi further testified that the child's reported difficulties with verbal comprehension, speech, and "positions and spatial relations" tended to make her a less competent reporter than other children of the same age. Sgroi testified that these developmental

delays made the child even more susceptible to leading and contaminating interview approaches.

Sgroi also testified that because multiple interviews were conducted in this case, there was an increased chance for contamination of the child's reports. On May 31, 2002, it was assumed that the child had been sexually abused because she had a trichomonas infection and she was questioned extensively by Pfeiffer on that date. Pfeiffer testified at the criminal trial that, in her initial interview with the child, she asked the child specifically whether she had been sexually touched by the petitioner or her brothers. Sgroi testified at the habeas trial that such closed-ended, leading questions that name a particular suspected perpetrator can make it difficult for a child to disagree with what the adult says and, therefore, can contaminate the recollections and statements of a child of this young age.

The department records reveal that the child's mother questioned the child multiple times between May 29, 2002, and June 3, 2002, until a department worker told her to stop and warned her that such repetitive questioning could taint a subsequent disclosure. Sgroi testified that such contamination can be an unintended byproduct of repeated interviews by anxious parents. She testified that: "One of the things that we know is that when children are interviewed over and over again about supposedly remembered events, each succeeding interview can create an unintended rehearsal effect. The more the child is asked to remember the story of this event that is under investigation, the more questions that are asked, perhaps leading and contaminating questions, the greater the rehearsal effect." Sgroi explained that "[r]esearch has shown that most children who are reporting personal life events, after the first or second time they report them to somebody, begin reporting in response to questions, in response to investigative interviews, begin reporting not only from

their actual memory of something that happened, but also from a mental script or story, if you will, that has been built up in the mind, that is an amalgamation or combination of recollections of things that actually happened, recollections [of] what I, the child, said when somebody questioned me about it, recollections of what somebody told me must have happened or suggested must have happened, things that the child has overheard grownups talking about, perhaps not addressed to the child, grownups talking about to each other in the child's presence." Sgroi reiterated that in the present case, the child's young age and developmental delays made her more susceptible to such contamination than an older child with normal cognitive development.

Sgroi also testified that a spontaneous disclosure of sexual abuse by a young child tends to have a higher index of credibility than a disclosure elicited by a person who might be considered to have a vested interest in the outcome of the complaint. She testified that a spontaneous disclosure by a child is less likely to be influenced by suggestible interviewing approaches. In the present case, the child's mother testified at the criminal trial that in April, 2003, nearly a year after the child was diagnosed with trichomonas, she allowed the child to attend a school-sponsored good touch-bad touch presentation and then "waited a day or two . . . and . . . sat down to talk to her and see if that would maybe help her open up and it did." The child's mother testified that she "asked [the child] to tell [her] about the [good touch-bad touch] program." During the course of that conversation, the child mentioned the petitioner and "started talking about the good touch-bad touch and then the part she was leaving out [the mother] added in, as far as private areas." Sgroi testified that the child's report was not spontaneous and the decision of the

child's mother to "add in" the suggestion that the petitioner had touched the child's private areas was a contaminating interviewing approach that influenced the reliability of the child's disclosure.

Sgroi further testified that there were a variety of problems in the way the April 16, 2003 forensic interview of the child was conducted. Sgroi testified that although the interviewer properly used open-ended questioning techniques throughout the interview, she failed to address and resolve several contradictions contained in the child's report of sexual abuse. For instance, the child stated repeatedly that the petitioner had abused her "yesterday." Sgroi testified that, on the basis of her review of the interview video, the child displayed little or no capacity to differentiate between the recent past and the more distant past. Sgroi also testified that, at several points during the session, the child recited what sounded like a rehearsed litany of complaints. Sgroi testified that because the child already had been questioned multiple times, a rehearsal effect had been introduced by repeated questioning. Sgroi testified that, in her expert opinion, the problems associated with the child's responses should have been addressed either at the April 16, 2003 interview or in a follow-up session.

Sgroi also testified that the child's testimony at the petitioner's criminal trial reflected extensive preparation. By the time of her testimony, the child had undergone three investigations for sexual abuse, each involving multiple interviews by her mother and various professional interviewers. During her testimony at trial, the child was able to give very little information about the alleged sexual assault. The child also testified that she never had been alone with the petitioner and that she had not attended kindergarten or a good touch-bad touch presentation. Although she stated that the petitioner's "thing" had gone inside her body, she stated that she could not feel it inside her body. According to

Sgroi, without the benefit of explanation and clarification by a defense expert, she believed it would be very difficult for the jury to discern how all of the possible complicating and contaminating factors could have affected the victim's reports and trial testimony.

"In addition to relying on Sgroi's testimony, the habeas court also found persuasive the testimony of attorney Michael Blanchard about the use of expert witnesses to assist the defense in a criminal trial. Blanchard testified that the proper preparation for a criminal trial involving charges of sexually assaulting a minor, in particular when the defendant denies the charges and will proceed to trial, necessitates the utilization of an expert witness both for trial preparation and during the trial itself. In his view, such required evidence was exemplified by Sgroi's testimony . . . challenging the manner in which the child had been interviewed.

"In her posttrial brief, the respondent did not challenge the propriety or the accuracy of the expert testimony presented by the petitioner. She argued only that the issues identified by the experts at the habeas hearing had been adequately brought to the attention of the trial jury by trial counsel's cross-examination of the state's lay and expert witnesses.

"The habeas court concluded, however, that trial counsel's failure to call an expert witness in the petitioner's criminal trial constituted ineffective assistance of counsel that had been prejudicial to the petitioner.[4] The court faulted trial counsel for failing to utilize a subject matter expert during the criminal trial to inform the

---

[4] "The court declined to address trial counsel's pretrial and investigative efforts because there was an inadequate record, as a result of trial counsel's death prior to the habeas hearing." *Michael T.* v. *Commissioner of Correction*, supra, 122 Conn. App. 422 n.7.

jury about issues relating to the . . . reliability of the belated disclosure of an assault by the child.

"The respondent's appeal challenges only the legal conclusions of the habeas court.[5] We begin by setting forth our standard of review. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, supra, 122 Conn. App. 421–22.

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Gooden* v. *Commissioner of Correction*, 127 Conn. App. 662, 668, 14 A.3d 1066, cert. denied, 301 Conn. 913, 19 A.3d 1259 (2011). "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of Correction*, 117 Conn. App. 431, 433, 979 A.2d 568, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

---

[5] "The respondent's brief states: 'The habeas court's historical fact determinations are not erroneous.' " *Michael T.* v. *Commissioner of Correction*, supra, 122 Conn. App. 422 n.8.

The respondent advances three arguments in support of her claim that, as a matter of law, the habeas court should not have faulted trial counsel for failing to present expert evidence to inform the jury about the reliability of the child's disclosure of sexual abuse by the petitioner. First, the respondent claims that trial counsel's cross-examination of the state's witnesses at trial sufficiently informed the jury about the psychological issues relating to a child's disclosure of sexual abuse. Second, the respondent claims that there is no evidence in the record to support Sgroi's testimony that the child was developmentally challenged or that the child's mother and the other interviewers contaminated the child's report of sexual abuse. Third, the respondent questions the extent to which Sgroi's testimony would have been admissible at the petitioner's criminal trial. Additionally, the respondent questions the validity of the habeas court's determination that the petitioner was prejudiced by the identified omissions in his trial representation.

The respondent first claims that trial counsel's cross-examination of the state's witnesses sufficiently informed the jury about the issues raised in Sgroi's testimony that the child's mother and the professionals who were investigating the complaint of sexual abuse created an accusatory atmosphere. We disagree. The habeas court expressly found that the failure to utilize a subject matter expert during the criminal trial on the issue of the reliability of the child's disclosure constituted deficient performance under the circumstances of the present case. In support of its conclusion, the habeas court relied on this court's dictum in *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 76, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008), that under certain circumstances, such as those involving the sexual abuse of children, the failure to use any expert can result in a determination that a

criminal defendant was denied the effective assistance of counsel. The habeas court also cited with approval *Gersten* v. *Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005), cert. denied sub nom. *Artus* v. *Gersten*, 547 U.S. 1191, 126 S. Ct. 2882, 165 L. Ed. 2d 894 (2006), in which the court observed that "[i]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel. . . . This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim, as opposed to direct physical evidence such as DNA, or third party eyewitness testimony." (Citations omitted.) Id.

In support of the respondent's argument that the habeas court improperly relied on Sgroi's testimony regarding the effect of an accusatory atmosphere on the reliability of the child's disclosure of sexual abuse, the respondent merely contends that the habeas court's conclusion "discounts [the state's witness'] testimony." This argument lacks merit and fails to provide a basis for rejecting the habeas court's judgment. On the basis of our review of the record, we conclude that trial counsel failed to elicit any information regarding the psychological issues related to a child's disclosure of sexual abuse that were raised by Sgroi's testimony at the habeas trial.

Although our Supreme Court "has never adopted a bright line rule that an expert witness for the defense is necessary in every sexual assault case"; *Michael T.* v. *Commissioner of Correction*, supra, 307 Conn. 100–101; we conclude that, under the facts of the present case, the habeas court properly determined that the failure of the petitioner's trial counsel to utilize an expert witness constituted deficient performance.

Regarding the respondent's second ground for reversal, the respondent claims that the habeas court improperly credited Sgroi's testimony that the child's mother and the other interviewers contaminated the child's disclosure of sexual abuse by engaging in repeated questioning of the child in an accusatory atmosphere and that such contamination was exacerbated by the child's developmental difficulties. The respondent argues that there is no evidence in the record to support Sgroi's testimony concerning such issues. We disagree.

The record reveals that before the child reported the alleged abuse at the forensic interview on April 16, 2003, she had been questioned on at least six separate occasions. Indeed, on June 3, 2002, after the child had already been asked on multiple occasions whether anyone had touched her, a department worker had to warn the child's mother to refrain from questioning her further to avoid tainting any subsequent disclosure. Pfeiffer testified at the petitioner's criminal trial that, using closed-ended questions, she asked the child whether specific people, including the petitioner, ever had touched her private parts. On June 11, 2002, after questioning the child at length about what led to her infection of trichomonas, Pfeiffer subsequently reported the child's difficulties with numbers, colors, verbal comprehension, speech, and positions and spatial relations. On June 26, 2002, during an examination at Yale-New Haven Hospital, a nurse practitioner asked the child whether she had been sexually abused and told the child that, "the reason why [the nurse] was seeing her was because there was a concern about how [the child contracted] trichomonas [because it] is a sexually transmitted disease primarily, and so [the nurse] asked her about, you know, anybody touching her anywhere." Accordingly, the respondent's contention that "there is no concrete evidence before this court concerning the nature of any interviews of [the child]" lacks merit. The habeas court

had ample evidence from which it could conclude that trial counsel should have presented expert testimony on the reliability of a disclosure of sexual abuse by a developmentally delayed child elicited after multiple interviews that were conducted in an accusatory context, and that by failing to do so, trial counsel's performance was deficient.

Turning to the respondent's third basis for reversal, she argues that Sgroi's testimony would not have been admissible at the petitioner's criminal trial. At the habeas trial, the respondent did not question Sgroi's professional credentials or challenge the admissibility of her testimony. When Blanchard testified that Sgroi's testimony would have provided critical information to the jury based on her expertise in the psychological issues related to a child's disclosure of sexual abuse, the respondent did not question whether that testimony would have been admissible at trial. Consequently, the habeas court was not asked to address the admissibility of Sgroi's testimony in a criminal proceeding. "We do not entertain claims not raised before the habeas court but raised for the first time on appeal." *Bertotti* v. *Commissioner of Correction*, 136 Conn. App. 398, 404, 44 A.3d 892, cert. denied, 307 Conn. 901, 53 A.3d 217 (2012).

Nevertheless, we note that, "[i]n cases that involve allegations of sexual abuse of children, [our Supreme Court has] held that expert testimony of reactions and behaviors common to victims of sexual abuse is admissible. . . . Such evidence assists a jury in its determination of the victim's credibility by explaining the typical consequences of the trauma of sexual abuse on a child. . . . It is not permissible, however, for an expert to testify as to his opinion of whether a victim in a particular case is credible or whether a particular victim's claims are truthful. . . . In this regard, we have found expert testimony stating that a victim's behavior was generally consistent with that of a victim of sexual or

physical abuse to be admissible, and have distinguished such statements from expert testimony providing an opinion as to whether a particular victim had in fact suffered sexual abuse." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Robles*, 103 Conn. App. 383, 403, 930 A.2d 27, cert. denied, 284 Conn. 928, 934 A.2d 244 (2007). Here, Sgroi testified as to the factors that affect the reliability of a child's disclosure of sexual abuse. She did not proffer an opinion regarding the ultimate determination as to whether the child was a credible witness. Accordingly, we decline to overturn the judgment of the habeas court on this basis.

Finally, although a habeas court may deny a petition for habeas corpus on the basis of the petitioner's failure to demonstrate prejudice from the errors of trial counsel; see *Gooden* v. *Commissioner of Correction*, supra, 127 Conn. App. 668; the respondent has failed to present an argument why, in the present case, the habeas court improperly found prejudice to have been established. In addressing the prejudice prong of *Strickland*, the habeas court cited with approval *Pavel* v. *Hollins*, 261 F.3d 210, 226 (2d Cir. 2001), in which the court stated that, if the evidence presented at trial is relatively weak, the "confidence in the judgment of conviction . . . may be undermine[d] . . . by a relatively smaller quantity of prejudice than might ordinarily suffice." (Internal quotation marks omitted.) Id. The habeas court determined that its "confidence in the outcome of the proceeding has been undermined, especially due to the mistakes, flaws and omissions underscored by Dr. Sgroi's expert testimony. Here, the conviction is not supported by overwhelming evidence of guilt."

In reaching its conclusion that trial counsel rendered ineffective assistance, the habeas court credited the testimony of Blanchard that Sgroi's testimony at the habeas trial covered information that was not presented to the jury at the criminal trial. Specifically, trial counsel

failed to present information on the effects of (1) an accusatory atmosphere, (2) repeated questioning and the possibility of a rehearsal effect, (3) the child's developmental delay, and (4) the problems associated with the April 16, 2003 interview. Accordingly, on the basis of the evidence in the record, we conclude that there is a reasonable probability that the outcome of the criminal trial would have been different if such testimony had been presented to the jury. We further conclude, therefore, that the habeas court properly determined that trial counsel's ineffectiveness prejudiced the petitioner.

The judgment is affirmed.

In this opinion the other judges concurred.