******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MICHAEL T. *v.* COMMISSIONER OF CORRECTION
## (SC 19229)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued April 28—officially released November 24, 2015*

*Adam E. Mattei*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Frederick W. Fawcett*, former supervisory assistant state's attorney, and *Gerard P. Eisenman*, former senior assistant state's attorney, for the appellant (respondent).

*Temmy Ann Pieszak*, resource attorney for habeas corpus matters, for the appellee (petitioner).

*Opinion*

ZARELLA, J. The sole issue in this certified appeal is whether counsel representing the petitioner, Michael T.,[1] at his criminal trial rendered ineffective assistance by failing to present certain expert testimony. At trial, the six year old daughter of the petitioner's former girlfriend accused him of having sexually abused her, and his trial counsel did not present expert testimony regarding the suggestibility of young children and the reliability of their recollections. The petitioner was convicted of sexual assault in the first degree in violation of General Statutes (Rev. to 2001) § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2), and subsequently filed a petition for a writ of habeas corpus. The habeas court concluded that the petitioner's conviction was obtained in violation of his right to effective assistance of counsel under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution, because his trial counsel failed to present certain expert testimony. The Appellate Court subsequently affirmed the habeas court's judgment.[2] *Michael T.* v. *Commissioner of Correction*, 144 Conn. App. 45, 62, 71 A.3d 660 (2013). The respondent, the Commissioner of Correction, now appeals from the judgment of the Appellate Court, claiming that the failure of the petitioner's trial counsel to present expert testimony was objectively reasonable because there was a strategic justification for not presenting such testimony, and, even if the omission was unreasonable, the error was harmless. We conclude that counsel's performance was objectively reasonable and therefore reverse the judgment of the Appellate Court.

The Appellate Court describes in detail the facts underlying the petitioner's criminal conviction; see id., 48–50; which we briefly summarize. In 2002, the victim, E, was four years old when she complained to her mother of vaginal pain. E was diagnosed with trichomonas,[3] which led medical personnel to suspect that E may have been sexually abused. After the diagnosis, E was interviewed multiple times by Cynthia Pfeifer, a forensic interviewer and social worker from the Department of Children and Families (department), but denied that anyone had sexually abused her. E's mother also tested positive for trichomonas, and, although Pfeifer asked the petitioner to get tested, he failed to do so. Approximately one year after E was diagnosed, she attended a presentation concerning inappropriate touching in her kindergarten class, after which she told her mother that the petitioner had sexually abused her. Thereafter, a second forensic interview was conducted in which E detailed the incident in which the petitioner had sexually abused her.

At trial, E testified to the same effect, alleging that the petitioner had sexually abused her. In addition to

E, the state called four expert witnesses to testify regarding trichomonas and generally regarding the reliability of sexual abuse disclosures by children. The petitioner's trial counsel cross-examined each of the state's witnesses but did not call an expert witness to testify in the petitioner's defense. Instead, counsel called only the petitioner, who denied sexually abusing E. The jury found the defendant guilty as charged.

The petitioner subsequently filed a petition for a writ of habeas corpus, alleging, inter alia, that his trial counsel had rendered ineffective assistance in failing to present expert testimony regarding (1) medical issues relating to trichomonas, and (2) the reliability of E's disclosure, in order to rebut the state's expert testimony on those subjects.[4] An evidentiary hearing was held at which the petitioner presented the testimony of Suzanne M. Sgroi, a physician experienced in working with victims and offenders in child sexual abuse cases, and Michael Blanchard, an attorney. The petitioner's trial counsel was unavailable to testify at the hearing because he was deceased.

At the habeas hearing, Sgroi testified "that there were a variety of problems in the way [E] was interviewed in this case by her mother and the professionals who were investigating the complaint of sexual abuse. Sgroi stated that, in her professional opinion, the investigation in the present case was flawed because it was conducted in an accusatory atmosphere in which the reliability of [E's] disclosure that the petitioner had sexually abused her was tainted by repetitive interviewing." Id., 51. "Sgroi [also] testified that research has shown that children under five years of age are particularly susceptible to leading and contaminating interview approaches and often have developmental barriers for providing the detailed and contextual information that enhances the credibility of their reports. Sgroi further testified that [E had] . . . difficulties with verbal comprehension, speech, and positions and spatial relations [which] tended to make her a less competent reporter than other children of the same age. Sgroi testified that [E's] developmental delays made [her] even more susceptible to leading and contaminating interview approaches." (Internal quotation marks omitted.) Id., 51–52. "Sgroi further testified that there were a variety of problems in the way the [second] forensic interview of [E] was conducted. Sgroi testified that, although the interviewer properly used open-ended questioning techniques throughout the interview, she failed to address and resolve several contradictions contained in [E's] report of sexual abuse." Id., 54.

Blanchard testified that, in a case involving sexual abuse allegations such as the present case, a reasonable defense attorney "normally" would consult an expert such as Sgroi. Blanchard further testified that he believed that presenting expert testimony is at least as

important as cross-examining the state's expert witnesses and that certain points Sgroi testified to at the evidentiary hearing never were conveyed to the jury at the petitioner's criminal trial. On the basis of this testimony, the habeas court determined that the petitioner established that his trial counsel had rendered ineffective assistance, and the court granted the petition with respect to that claim.

The respondent, on the granting of certification, appealed from the judgment of the habeas court to the Appellate Court. The Appellate Court affirmed the habeas court's judgment, concluding that the petitioner's trial counsel had failed to present expert testimony regarding medical issues relating to trichomonas without addressing the issue of counsel's failure to present expert testimony regarding the reliability of the disclosure of sexual abuse by children. *Michael T.* v. *Commissioner of Correction*, 122 Conn. App. 416, 417–18, 425, 999 A.2d 818 (2010). This court subsequently reversed the judgment of the Appellate Court and remanded the case for consideration of the remaining issue, namely, whether the failure of the petitioner's trial counsel to present expert testimony regarding the suggestibility of young children and the reliability of a child's recollection constituted ineffective assistance. *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 103–104, 52 A.3d 655 (2012). On remand, the Appellate Court determined that the petitioner's trial counsel had rendered ineffective assistance by failing to present such expert testimony and thus affirmed the habeas court's judgment. *Michael T.* v. *Commissioner of Correction*, supra, 144 Conn. App. 47, 62. The respondent then appealed from the judgment of the Appellate Court to this court. We granted certification to appeal, limited to the following question: "Did the Appellate Court properly determine that defense counsel provided ineffective assistance by failing to call an expert to testify to the suggestibility of young children and the reliability of a child's recollection one year after the alleged event?" *Michael T.* v. *Commissioner of Correction*, 310 Conn. 938, 79 A.3d 891 (2013).

On appeal to this court, the respondent claims that trial counsel's failure to call such an expert did not render his performance constitutionally deficient because (1) the record reveals strategic reasons for not calling such an expert, (2) the testimony of such an expert would have been inadmissible, and (3) presenting the testimony of such an expert would have been a novel tactic. The respondent further claims that, even if trial counsel's performance *was* constitutionally deficient, the petitioner was not prejudiced by that deficient performance because counsel, in cross-examining the state's experts and in closing argument, raised the same points that a defense expert would have raised in his or her testimony. The petitioner rejects these contentions, claiming instead that (1) reasonable coun-

sel would have known that an expert would have been helpful to the petitioner's defense, and (2) the petitioner was prejudiced by trial counsel's omission because an expert like Sgroi would have provided the jury with information that the petitioner's trial counsel was unable to elicit on cross-examination of the state's experts.[5] We conclude that trial counsel's performance was objectively reasonable and, therefore, that the petitioner failed to prove his ineffective assistance claim.

Before analyzing the respondent's claims, we set forth the applicable standard of review and the law governing ineffective assistance of counsel claims. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 312 Conn. 345, 351–52, 92 A.3d 944 (2014).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Citations omitted; internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 470, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, U.S. , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

"As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong . . . ." (Citation omitted; internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, supra, 307 Conn. 91.

With respect to the performance prong of *Strickland*, we are mindful that "[j]udicial scrutiny of counsel's

performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a *strong presumption* that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citations omitted; emphasis added; internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689.

Similarly, the United States Supreme Court has emphasized that a reviewing court is "required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Citations omitted; internal quotation marks omitted.) *Cullen* v. *Pinholster*,     U.S.     , 131 S. Ct. 1388, 1407, 179 L. Ed. 2d 557 (2011). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012).

Turning to the present case, we first apply the performance prong of the *Strickland* test and consider whether counsel's failure to call an expert to testify regarding the suggestibility of young children and the reliability of a child's recollection was objectively reasonable. The respondent claims that this omission was objectively reasonable because there was a strategic reason not to offer such expert testimony, namely, to prevent the state from offering a prior consistent statement made by E, especially when counsel could effectively "advanc[e] the issue of suggestibility through cross-examination . . . ." We note that the respondent's claim appears to be premised on certain assumptions. First, it assumes that the video recording of the second forensic interview, which occurred subsequent to E's disclosure to her mother and in which E made some statements that were inconsistent with or

extended beyond the trial testimony, would have been admissible as a prior consistent statement. See Conn. Code Evid. § 6-11 (addressing limits on admissibility of prior consistent statements). Second, it assumes that any expert opinion evidence that served to impeach the reliability of E's disclosure would have provided a basis to admit the video recording, whereas elicitation of comparable evidence through cross-examination of the state's witnesses would not have provided a basis for its admission. In the absence of any challenge to these assumptions by the petitioner, we accept them in analyzing the respondent's claim. Thus, the question before us is not merely whether reasonable counsel could have concluded that the second forensic interview, on balance, was more damaging than helpful to the defense. Instead, the question is whether reasonable counsel could have concluded that the benefit of presenting expert opinion regarding the reliability of E's delayed disclosure of abuse was outweighed by any damaging effect of the video-recorded interview in light of other means to impeach that disclosure.

To resolve this claim, we first must set forth the following additional facts regarding the petitioner's criminal trial. At that trial, the state called Lisa Melillo-Bush, a school psychologist and forensic interviewer, as an expert to testify regarding delayed disclosures of sexual abuse by children. On cross-examination, the petitioner's trial counsel asked Melillo-Bush whether she was familiar with the "McMartin case," a case in which the mishandling of an investigation into allegations of a preschool teacher's alleged sexual abuse of students caused numerous children to fabricate their allegations.[6] See generally *Buckey* v. *Los Angeles*, 968 F.2d 791 (9th Cir.), cert. denied sub nom. *Manhattan Beach* v. *Buckey*, 506 U.S. 999, 113 S. Ct. 599, 600, 121 L. Ed. 2d 536 (1992). The senior assistant state's attorney (prosecutor) objected, and, outside the presence of the jury, the petitioner's counsel explained that he was attempting to ask Melillo-Bush "about a situation where kids can feed off hysteria or suggestion . . . ." The prosecutor responded that, "[i]f we go down that road, I'm going to ask that the [video recording of E's second forensic interview] be introduced [as a prior consistent statement]. [Counsel] is making the claim that children are susceptible to suggestion . . . ." At that point, the petitioner's counsel stated that he would no longer pursue that line of questioning.

The respondent argues that this exchange demonstrates that, if the petitioner's counsel had called an expert like Sgroi to cast doubt on the reliability of E's disclosure, the state would have offered the video recording of the second forensic interview of E as a prior consistent statement. Preventing this from happening, the respondent argues, is a reasonable strategic basis for not presenting expert testimony such as Sgroi's.[7] We agree.

Preventing the jury from watching the video recording of E's prior consistent statement constitutes a reasonable strategic basis for declining to call an expert witness like Sgroi because it would have been damaging to the petitioner's defense. Specifically, the video recording would have buttressed E's credibility because her disclosure to the forensic interviewer was consistent with her trial testimony. See Conn. Code Evid. § 6-11 (b) (purpose of prior consistent statement is to rebut impeachment of witness' credibility). Moreover, during the second forensic interview, E disclosed details about the abuse that she had not disclosed during her testimony, including that the petitioner had told her to "shut up" and had called her a "bitch," that the petitioner had threatened to hurt E if she disclosed the abuse, and that she had been wearing her "Christmas clothes" that her "Nana" had given her when the petitioner sexually abused her. A reasonable defense attorney understandably would not have wanted the jury to hear this evidence because it would have generated sympathy for E, cast the petitioner in an unfavorable light, and added details to the sexual abuse, thereby bolstering E's credibility. In addition, its admission would have provided a second explanation for E's delayed disclosure that was consistent with other evidence in the case, namely, that the earlier denials were made out of fear that the petitioner would harm her. The petitioner resided in the household before E disclosed the abuse to her mother but had left by the time she did disclose it.

With respect to the other side of the equation, we are mindful that the habeas court found Sgroi, who testified as to both the possibility of nonsexual transmission of trichomonas and the problems with the interview methods, to be "highly credible." Nonetheless, we conclude that, in making a tactical decision whether to proffer expert testimony, reasonable counsel would have recognized that Sgroi's opinion would have been vulnerable to attack on various grounds.[8] For example, Sgroi deemed the most significant contamination to have occurred in the circumstances under which E had disclosed the abuse to her mother following the school presentation on inappropriate touching. Sgroi found it very pertinent that the application for the petitioner's arrest warrant and the investigative interview report both inaccurately reflected that E had spontaneously disclosed the abuse to her mother after the presentation, a factor that would have suggested reliability. Neither the application nor the report, however, was introduced at the petitioner's criminal trial; nor did anyone attest to that fact during the trial. Sgroi also found it extremely significant that E's mother had testified that she added in words that E left out, specifically "private areas," when E disclosed what the petitioner had done. The application for the arrest warrant, however, included what appeared to be direct quotations

of E's statement to her mother in which E is reported to have said that the petitioner "put his thing-thing *down there*"; (emphasis added; internal quotation marks omitted); instead of naming her body part or referring generically to her private parts. If the petitioner's trial counsel had attempted to exploit the mother's addition of "private areas" to E's disclosure, presumably the state would have elicited evidence to clarify the circumstances.

We therefore conclude that there was a legitimate, strategic reason not to call an expert like Sgroi and that trial counsel's performance was not constitutionally deficient. See, e.g., *Williamson* v. *Moore*, 221 F.3d 1177, 1181 (11th Cir. 2000) (trial counsel's performance was not unreasonable when counsel declined to present testimony of certain witnesses because, if they had testified, "conflicting hurtful evidence most likely would also have been brought out"), cert. denied, 534 U.S. 903, 122 S. Ct. 234, 151 L. Ed. 2d 168 (2001); *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 831, 87 A.3d 600 (trial counsel's performance was not unreasonable when counsel declined to cross-examine witness on certain subject matter because, if counsel had done so, damaging forensic interview of child victim may have been introduced into evidence), cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). Accordingly, we need not consider the respondent's additional reasons why trial counsel provided adequate assistance or address the prejudice prong of the *Strickland* test.

The petitioner does not dispute that the video recording of E's second forensic interview would have been damaging to his case or that preventing the state from offering it constituted a reasonable, strategic basis for not presenting the testimony of an expert like Sgroi. Instead, the petitioner claims that his trial counsel's failure to call an expert could not have been a reasonable tactical decision because counsel failed to investigate the usefulness of such an expert. According to the petitioner, "the habeas court found [that] trial counsel had failed to investigate the utility of an expert" and "found [that] trial counsel elected not to use an expert even as an advisor." The petitioner claims that, without consulting an expert, counsel could not reasonably have decided whether offering the testimony of such an expert would have been useful to the petitioner's defense.[9] The petitioner's claim has no merit.

As an initial matter, the premise of the petitioner's claim is incorrect; the habeas court did not make a finding that the petitioner's trial counsel failed to investigate the utility of an expert. Instead, the habeas court found that "[t]here [was] no evidence aside from [the] petitioner's scant testimony regarding [his trial counsel's] pretrial and investigative efforts," leaving the habeas court "in the untenable position of speculating as to what [counsel] exactly did as part of his investiga-

tion." This led the habeas court to conclude that it was "unable to address the [petitioner's] claims attacking [counsel's] pretrial and investigative efforts in any meaningful way." Thus, the petitioner's claim concerning counsel's failure to investigate has no factual basis. It is possible that trial counsel thoroughly investigated whether it would have been useful to offer the testimony of an expert or even that he consulted with one. We do not know, however, because, as the habeas court observed, the petitioner failed to present any evidence regarding trial counsel's pretrial and investigative efforts.

What we do know from the record indicates that, contrary to the petitioner's claim, trial counsel knew that eliciting testimony regarding the suggestibility of young children was a viable means of impeaching E. Indeed, the petitioner's counsel indicated to the trial court that he had asked Melillo-Bush about the "McMartin case" because that was a case in which children were influenced by the suggestions of adults. Also, immediately preceding counsel's question regarding the McMartin case, he asked Melillo-Bush, "[i]sn't it a fact that kids especially that age . . . four to five years old . . . want to please adults very much . . . [and] are very receptive to suggestions . . . ?" Thus, it is clear from counsel's cross-examination of Melillo-Bush that he knew of the phenomenon of children being susceptible to suggestion and that experts have opinions on that subject matter. Accordingly, the petitioner's claim that trial counsel failed to investigate the usefulness of such an expert necessarily fails.

Even if there was no indication in the record that trial counsel was aware of this potential means of defense, the petitioner's claim nevertheless would fail because "counsel is strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." *Strickland* v. *Washington*, supra, 466 U.S. 690. The petitioner failed to overcome this presumption because he presented no evidence that his trial counsel failed to investigate the usefulness of an expert like Sgroi. Thus, we conclude that the petitioner failed to prove that his trial counsel's performance was constitutionally deficient on the ground that counsel failed to present expert testimony regarding the suggestibility of young children and the reliability of a child's recollection.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the habeas court with direction to deny the petitioner's habeas petition.

In this opinion the other justices concurred.

[1] In accordance with our policy of protecting the privacy interests of victims of sexual assault and risk of injury to a child, we decline to use the petitioner's surname or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] We note that the Appellate Court initially affirmed the habeas court's judgment in *Michael T.* v. *Commissioner of Correction*, 122 Conn. App. 416, 425, 999 A.2d 818 (2010). This court subsequently reversed the Appellate Court's judgment and remanded the case to that court for further proceedings. See *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 104, 52 A.3d 655 (2012). On remand, the Appellate Court again affirmed the habeas court's judgment; *Michael T.* v. *Commissioner of Correction*, 144 Conn. App. 45, 62, 71 A.3d 660 (2013); and the respondent brought the present appeal.

[3] "Trichomonas is a parasitic protozoa that can infect the urinary tract or prostate of males and the vagina or urinary tract of females." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 88 n.6, 52 A.3d 655 (2012).

[4] Prior to filing his habeas petition, the petitioner appealed directly from the judgment of conviction to the Appellate Court, which affirmed the judgment of conviction. *State* v. *Michael T.*, 97 Conn. App. 478, 490, 905 A.2d 670, cert. denied, 280 Conn. 927, 909 A.2d 524 (2006).

[5] The petitioner also claims that we should not review the respondent's claims because certification was improvidently granted. The petitioner fails, however, to cite Practice Book § 84-2, the controlling rule of practice with respect to certification, and to explain why there are not "special and important reasons" for allowing the respondent's petition for certification to appeal in the present case. Practice Book § 84-2. Moreover, the petitioner acknowledges that the decision of whether to grant certification to appeal in a particular case rests within this court's sole discretion. We exercise that discretion and determine that certification was not improvidently granted.

The petitioner further argues that we should not review the respondent's claims because the certified question does not accurately describe the issue considered and decided by the Appellate Court. Specifically, the petitioner claims that the Appellate Court focused on whether trial counsel should have called an expert to testify regarding "the interviewing techniques used and how they [gave] rise to psychological factors that can undermine reliability," rather than "the suggestibility of young children and the reliability of a child's recollection . . . ." (Internal quotation marks omitted.) We reject the petitioner's claim.

Regardless of the semantic differences between the Appellate Court's characterization of the issue and our characterization of it in the certified question, the Appellate Court decided the same substantive issue. Importantly, the language of the certified question is nearly identical to the language we used in remanding the case to the Appellate Court. Compare *Michael T.* v. *Commissioner of Correction*, supra, 307 Conn. 103 (remanding for consideration of whether "the petitioner's trial counsel had provided ineffective assistance by failing to call an expert to testify to the suggestibility of young children and the reliability of a child's recollection one year after the alleged event"), with *Michael T.* v. *Commissioner of Correction*, supra, 310 Conn. 938 ("[d]id the Appellate Court properly determine that defense counsel provided ineffective assistance by failing to call an expert to testify to the suggestibility of young children and the reliability of a child's recollection one year after the alleged event"). In any event, if the petitioner believed that the certified question needed to be rephrased, he should have filed a motion with this court urging us to rephrase the certified question before the case was argued.

[6] It appears that trial counsel confused *Buckey* v. *Los Angeles*, 968 F.2d 791 (9th Cir.), cert. denied sub nom. *Manhattan Beach* v. *Buckey*, 506 U.S. 999, 113 S. Ct. 599, 600, 121 L. Ed. 2d 536 (1992), the "McMartin case," with *State* v. *Kelly*, 118 N.C. App. 589, 456 S.E.2d 861, review denied, 341 N.C. 422, 461 S.E.2d 764 (1995), another case involving false allegations of sexual abuse stemming from improper investigation techniques.

[7] The petitioner asserts that we should not review this "claim" because the respondent failed to raise it in the Appellate Court. According to the petitioner, reviewing this claim would allow the respondent to ambush the Appellate Court and the petitioner. See *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619, 99 A.3d 1079 (2014) ("[o]ur appellate courts, as a general practice, will not review claims made for the first time on appeal"). Although we agree that the respondent did not make this specific argument in the Appellate Court or in the habeas court, we disagree that we are therefore precluded from considering it in the present appeal.

We properly can review the respondent's argument because it is an *argument*, not a *claim*. "[W]e will not review a claim unless it was distinctly raised at trial. . . . We may, however, review legal arguments that differ from those raised before the trial court if they are subsumed within or

intertwined with arguments related to the legal claim raised at trial." (Citations omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 203, 982 A.2d 620 (2009); see also *State* v. *Fernando A.*, 294 Conn. 1, 116 n.32, 981 A.2d 427 (2009) (*Palmer, J.*, dissenting in part) ("Generally speaking, an argument is a point or line of reasoning made in support of a particular claim. Only claims are subject to our rules of preservation, not arguments."); *Rowe* v. *Superior Court*, 289 Conn. 649, 663, 960 A.2d 256 (2008) (reviewing theories not raised in trial court because "those theories [were] related to a single legal claim"); cf. *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 569, 916 A.2d 5 (2007) (addressing alternative ground for affirmance that was not raised at trial because, inter alia, issue was "closely intertwined" with certified question).

In the present case, the respondent's argument that there was a strategic reason not to call an expert is subsumed within the claim that the respondent raised in the Appellate Court, namely, that the habeas court incorrectly determined that the petitioner's trial counsel rendered ineffective assistance by failing to present expert testimony regarding the suggestibility of young children and the reliability of a child's recollection. See *Michael T.* v. *Commissioner of Correction*, supra, 144 Conn. App. 57. The respondent's argument is closely intertwined with this claim because the question of whether to call an expert witness *always* is a strategic decision. See *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 521, 964 A.2d 1186 ("the decision whether to call a particular witness falls into the realm of trial strategy"), cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009). In other words, the petitioner cannot claim that the habeas court correctly determined that his trial counsel rendered ineffective assistance on the ground that counsel failed to call an expert and then argue that the respondent is barred from arguing whether there was good reason for counsel not to call an expert.

Moreover, the petitioner cannot claim to have been ambushed by the respondent's argument that there was a strategic reason not to call an expert like Sgroi. A party is ambushed "when that party is deprived of a fair chance to defend a claim at the trial level and create a record for appeal." *State* v. *Fernando A.*, supra, 294 Conn. 36 n.4 (*Schaller, J.*, concurring and dissenting). Because the petitioner's trial counsel died prior to the habeas trial in the present case, the record for appeal with respect to whether counsel had a strategic basis for not calling an expert was limited to the transcripts of the petitioner's criminal trial. Thus, because the petitioner could not have added anything more to the record for purposes of contesting the respondent's argument that the petitioner's trial counsel had a strategic basis for not calling an expert, the petitioner was not ambushed, as he asserts. Accordingly, we reject the petitioner's claim that we cannot review the respondent's argument.

[8] It is unfortunate that the respondent failed to fully avail herself of the opportunity during the habeas trial to impeach Sgroi's testimony on the various points that the respondent makes on appeal to this court. Nonetheless, to the extent that the respondent's arguments require commonsense observations predicated on the existing record, we conclude that it is appropriate to address this matter at this stage of the proceedings rather than to expose E to another trial when we are persuaded that it would yield the same result. To the extent, however, that the respondent relies on evidence that never was proffered at either the petitioner's criminal trial or his habeas trial to impeach Sgroi's opinion, we do not rely on such evidence. Sgroi could not have anticipated and therefore responded to such evidence, nor could the petitioner have presented other evidence to rehabilitate Sgroi.

[9] The petitioner also asserts in a lone sentence in his brief that "[t]he claimed tactical decision [would] not [have been] reasonable even if the investigation was adequate." The petitioner, however, fails to elaborate at all on this argument. In the very next sentence of his brief, the petitioner returns to his inadequate investigation argument, stating that, "[a]bsent adequate investigation, counsel could not make a reasonable decision because he did not know what information an expert could have provided as to the defects in the [video-recorded] interview." It is clear from the petitioner's brief that he does not seriously dispute the fact that preventing the admission of the prior consistent statement constituted a legitimate, strategic reason not to offer the testimony of an expert.